## CUNNINGHAM v WARD BAKING CO

Ohio Appeals, 7th Dist, Mahoning Co

No 2472. Decided Oct 21, 1938

William E. Plau, Youngstown, for appellee.

John H. McNeal, Cleveland, and A. L. Burgstaller, Youngstown, for appellant.

## OPINION

By CARTER, J.

This cause is before this court on appeal on questions of law. The action below was one for personal injuries. The cause came on for trial to the court and jury, and at that time appellant filed an amended answer admitting liability. However, the question of damages was not admitted and was submitted to a jury, resulting in a verdict for appellee in the amount of $8,000.00. Motion for new trial filed, overruled and judgment entered on the verdict, and appeal is prosecuted to this court to reverse the verdict and judgment.

From the information gathered from the pleadings and statement of counsel in argument, the accident occurred in the following manner: Appellee was standing on the highway near the side of his automobile, waiting for the defendant's truck to pass before entering his car, and while so standing he was struck on his right side and hip by the front end of the defendant's truck, which threw him in the air and as he came down he landed on or about the front of defendant's truck. The accident occurred on the 21st day of May, 1936, at about three forty-five P .M.

The errors urged are—First:: That the court erred in refusing a new trial to appellant; Second, error in the court's general charge; Third, error in permitting the plaintiff to introduce incompetent, illegal and prejudicial testimony; Fourth, in permitting counsel for plaintiff to propound

leading questions to various witnesses; **Fifth** that the verdict was not supported by competent, legal evidence, contrary to the weight of evidence and contrary to law; **Sixth**, excessive damages given under the influence of passion and prejudice.

Disposition of the other errors urged will be dispositive of the error urged that the court erred in refusing appellant a new trial. The second error urged is to the effect that there was error in the court's general charge, wherein he instructed the jury as follows:

"You should take into consideration what loss of wages he has sustained by reason of the conduct of this defendant from the time he received the injuries he claims to have received up to the present time,"

it being urged that there is no evidence as to what amount of wages, if any, the plaintiff lost between the date of injury, May 21, 1936, and the date of trial, November 29th and 30th, 1937.

It appears to be well settled that the measure of damages for impairment of earning capacity is the difference between the amount which the plaintiff was capable of earning before his injury and that which he was capable of earning thereafter. To this effect see 17 Corpus Juris 900; 6 Thompson on Negligence, §7307; **Hanna v Stoll, 112 Oh St 344**, and cases therein cited

In the case of Hanna v Stoll, the court in the second paragraph of the syllabi say:

"Where impairment of earning capacity is pleaded as special damages, it is essential that evidence be adduced from which an estimate thereof may be made by the jury, and in the absence of any evidence on the subject it can not properly be submitted to the jury as an element of damages."

Using this rule as the criterion, is there evidence in the record from which the jury could make a finding of impairment of earning capacity in the interim between the time of injury and time of trial. Appellee claimed special damages in his amended petition in the way of loss or impairment of earning capacity, wherein he alleged that:

"At the time of the accident he was forty-four years of age, enjoying good health, earning and able to earn $170.00

per month; and immediately following the recovery of the injury he was unable to return to work and that his ability to earn money in the future had been impaired."

The court charged the jury:
"You should have taken into consideration what loss of wages he has sustained by reason of the conduct of the defendant from the time he received the injuries he claims to have received up to the present date."

The court gave no rule by which to measure that damage, as indicated in the case of Hanna v Stoll, supra. However, no request was made by appellant to give the rule of damages for impairment of earning capacity, and at the conclusion of the general charge the court inquired of counsel:

"Court: What do you say, Mr. Pfau?
"Mr. Pfau: Nothing, Your Honor.
"Court: What do you say, Mr. McNeal?
"Mr. McNeal: Nothing."

If there were omissions in the charge, counsel were given the opportunity to have the jury further instructed. However, counsel for defendant stated he had nothing to offer. The error of which complaint was made was one of omission on the part of the court and not one of commission. Therefore, appellant is not in a very good position to now complain in the light of the above facts. It is the duty of counsel, as officers of the court, to assist in the trial of causes in order that justice may be done between litigants. As indicated above, counsel for appellant appeared satisfied with the charge until after a verdict was returned unsatisfactory and now claims the charge was insufficient.

Is there any competent evidence by which the jury could measure the damages suffered by the appellee in the interim between the jury and the trial? The record discloses that appellee was employed as a bus driver for the Youngstown Bus Company and was off work 29 days after the accident; that at the time of the accident he was making 65c per hour; that at the expiration of the 29 day period, when he went back to work, he was paid 66c per hour and on June 1, 1937, his wage was increased 10c per hour. Certainly there was some evidence as to loss of wages following the accident when he was unable to go back to work for 29 days. We could

hardly assume that the increase in his wages was due to the fact that he was injured. No doubt the raise would have come to appellee either with or without the injuries. It therefore appears to this court that there was some evidence of impairment of earning capacity in the interim between the injury and trial. The loss was, according to the record, not great, and in the absence of any interrogatory we are unable to say that the jury allowed more than the evidence warranted. There was no error prejudicial to appellant in the charge of the court in this regard. To this effect see **Cleveland-Youngstown Cab Company v Orgel, 6 Abs 620; John Boles v Jerome Alberti, 25 Abs 186,** being a case determined by this court, Judge Roberts writing the opinion, and concurred in by Judge Nichols and the writer of this opinion.

It is also claimed that there is no evidence in the record of impairment of earning capacity in the future. Appellee claimed in his amended petition that the injuries which he received were of a permanent nature, and that his future ability to work has been impaired, and that his ability to earn money in the future had been impaired. There is evidence in the record of permanent disability suffered by appellee, caused by this accident.

The court charged the jury:

"You may take into consideration, provided the evidence shows it with reasonable certainty, what loss of earnings he will endure in the future."

No specific standard was given as to how the impairment of loss of earnings was to be by the jury determined. The true rule in this regard is the same as above indicated, to-wit, the difference between the earning capacity before and after the accident. This rule ▮▮▮▮▮▮▮ was not given by the court, and what has been heretofore said in connection with the special damages claimed by appellee for loss of wages from the time of injury to the time of trial is equally applicable to this urged error. Is there any evidence in the record to the effect that the appellee would with reasonable certainty suffer loss of earning capacity in the future?

Four doctors testified on behalf of appellee in addition to the testimony of appellee, appellee's wife and acquaintances. Without reiterating what these witnesses state in detail, it is sufficient to say that it was the conclusion of the various doctors called on behalf of the appellee, that he had suffered quite severe injuries at the time of the accident, and possibly of a permanent character. No doubt appellee suffers pain and discomfort, according to the testimony in the record, and that he does not do many things which he did formerly; that he is compelled to wear a support, which no doubt is uncomfortable and not desirable; and that in order to relieve him of pain and discomfort a major operation will be necessary. While the yard stick was not given by the court as to how the damages, if any, by the jury were to be measured, there is evidence which clearly shows that his earning capacity will be in the future impaired by reason of the injuries received. No special interrogatory was submitted to the jury and we are unaware of what amount was allowed in the way of damages for impairment of future earnings.

We again refer in this connection to the case of **John Boles v Jerome Alberti, 25 Abs 186,** where this court passed on a question almost identical with the question before us at this time. We might further suggest that there is evidence in the record that appellee was making 65c an hour before the accident, and that when he went back to work after the accident, on June 1, 1936, he received 66c, and later, in June of 1937, his hourly wages were 76c an hour. So there is evidence in the record of his hourly wage before the accident and thereafter when he went back to work. Appellee also testified that after he went back to work he worked a couple of days under a handicap; that he took a day off and then would go back again and this continued for quit a while. While the loss of time as claimed by appellee was somewhat weakened on cross examination, I simply cite these claims of appellee as bearing on the question of the presence of any testimony in the record as a basis of the court's charge.

In the case of **Hanna v Stoll, 112 Oh St 344,** the court stated in its opinion that there was no evidence whatever which could furnish the basis for a determination of the loss incurred by plaintiff. Apparently no evidence of his ability to earn money prior to or subsequent to the injuries was present in that case, and we think that that case is clearly distinguishable from the case at bar. It is the view of this court that there was some evidence in the record warranting a charge on impairment of future earnings, and if the evidence disclosed that no damages were shown, we

must assume that the jury allowed none.

The third error urged is as follows: That the court permitted plaintiff to introduce incompetent, illegal and prejudicial testimony. The basis of this claimed error is that in plaintiff's examination of the witness, Dr George C. Warnock, leading questions were propounded to which objection was made. These questions and answers are as follows:

"Q. Now, about his back, did that get well?

A No, he complained a great deal about his back

Mr McNeal: Move to strike out the answer.

Court: It may remain.

Mr McNeal: Exception.

Q. What, if anything, did you find as regarding—, to go into the summer of 1936, as to whether there was any rigidity of muscles in the region of the back?

Mr McNeal: I object.

Court: Overruled.

Mr. McNeal: Exception.

A. He had rigidity in the muscles of the back.

Q. Is that rigidity nature's way of trying to protect an injured area?

Mr. McNeal: I object.

Court: He may answer. It is leading, of course, but go ahead.

Mr McNeal: Exception.

Q. What improvement, if any, did you note from the time you put the brace on in August, 1936, and when you saw him about a week or so ago; did you see any improvement?

A. No, I can't say I have. He said he got along very well with his brace on but he couldn't get along without it.

Mr. McNeal: I move to strike out the latter part of the answer, what the patient said.

Court: It may remain.

Mr. McNeal: Exception."

Dr Warnock was the family physician and had been for nineteen years, and was called to treat appellee at the time of the accident and treated him during his illness. The statement by Dr. Warnock as to appellee complaining about his back was in connection with treatment being administered to appellee, and it appears to be universally recognized that where such is the case, statements made by the injured party to his doctor are competent on the theory that the patient would not make untrue statements in connection with treatment. See **Pennsylvania Company v Files, 65 Oh St 403, 406.** There was no error in this regard.

Now, it is urged that the court permitted leading questions to be propounded to the doctor, as hereinbefore indicated it seems to be well settled that the permitting of leading questions rests largely in the court's discretion and unless the same is abused and prejudicial to the party complaining, the reviewing courts will not interfere with that discretion. To this effect see Bowers on Judicial Discretion, page 331, paragraph 286; **John Evans v State of Ohio, 24 Oh St 458,** the fourth paragraph of the syllabi being as follows:

"The mere fact that leading questions are improperly allowed on the examination of a witness, although allowed as of right, is not error for which the judgment will be reversed."

To the same effect see **Thomas H. Deveaux v Wm. E. Clemens, 9 O. Cir. Dec. 467.** There was no prejudicial error in this regard.

Mrs. Cunningham, wife of plaintiff, testified as follows:

"Q. Did he have any trouble in his back before the time of the accident?

MR. McNEAL: I object.

COURT: He may answer.

MR. McNEAL: Exception.

A. No.

Q. And that night how was your husband; tell us what you observed about him?

A. He was in very severe pain.

MR McNEAL: Move to strike out the answer, if Your Honor please.

COURT: It may remain.

MR. McNEAL: Exception.

Q. Does he seem to have any pain?

A. Yes, he does.

MR. McNEAL: Move to strike out that answer.

COURT: It may remain.

MR. McNEAL: Exception."

As indicated above, the wife of appellee testified that he was in very severe pain. This was in response to the following question by appellant's counsel:

"Q. And that night (referring to the night of the day on which the accident occurred) how was your husband? Tell us what you observed about him.

A. He was in very severe pain."

' Probably a more satisfactory answer would have been to the effect that he appeared to be in pain instead of in the form given However, such was not prejudicially erroneous. As stated in Hanna on Ohio Trial Evidence, page 348, paragraph 411:

"A non-expert may give opinions as to pain and sickness of another."

The last error urged is that the verdict is excessive, given under the influence of passion and prejudice. We have examined the record with the claimed error in view, and, without citing the testimony in detail, we are of the opinion ▆▆▆▆▆ that an $8,000 verdict taking into consideration that appellee had a congenital condition which we think had something to do with some of the ailments testified to, is excessive, and in this regard was against the manifest weight of the evidence.

We have considered the other errors urged and none of them are by this court deemed to be prejudicial.

Reversed and remanded for a new trial.

NICHOLS, PJ, and BENNETT, J, concur in the judgment.